CHRISTOPHER W. KATZENBACH (SBN 108006)
  Email: ckatzenbach@kkcounsel.com
KATZENBACH LAW OFFICES
912 LOOTENS PLACE, 2ND FLOOR
SAN RAFAEL, CA 94901
Telephone: (415) 834-1778
Fax: (415) 834-1842

Attorney for Plaintiffs ANTONIO C. SIMONELLI,
JACQUELINE C. SIMONELLI and PATRICK SIMONELLI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO C. SIMONELLI, JACQUELINE C. SIMONELLI, and PATRICK SIMONELLI,<br><br>Plaintiffs,<br><br>vs.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., FERRARI N.V., and SERGIO MARCHIONNE, ,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SERCURITIES EXCHANGE ACT OF 1934**<br><br>**FRAUD**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1.   **JURISDICTION.**   This case arises from violations of the Securities Exchange Act of 1934, section 10b and Rule 10b-5 (17 C.F.R. 240 10b-5) that prohibits any act or omission resulting in fraud or deceit in connection with purchase or sale of any security traded on national securities exchanges.   This Court has jurisdiction of this case under section 27 of the Securities Exchange Act of 1934 (herein the "Exchange Act") (15 U.S.C. § 78aa(a)) and sections 1331 and 1343 of Title 28 of the United States Code.   This Court has jurisdiction over the claims arising under State Law pursuant to 28 U.S.C. Section 1367 as these claims are so related to the claim under Federal Law that they form part of the same case or controversy under Article III of the United States Constitution.

2.    **VENUE**.    Venue is appropriate in this judicial district pursuant to Section 27 of the Exchange Act of 1934 (15 U.S.C. § 78aa(a)) as defendants transacted business within this judicial district and under section 1391(b) of the Title 28 of the United States Code as a substantial part of the acts or omissions giving rise to the claims occurred within this judicial district.

3.    **INTRADISTRICT ASSIGNMENT**.    Under Civil L.R. 3-2(b), assignment is proper in the San Francisco headquarters, as the violation of rights alleged herein occurred in San Francisco and Marin Counties, California.

## PARTIES

4.    Fiat Chrysler Automobiles N.V. ("FCAU") is a foreign company incorporated in the Netherlands.  FCAU is, and has been at all material times, listed on a U.S. Securities Exchange and required to comply with the rules and regulations of the Securities and Exchange Commission ("SEC"), including rules as to registration statements for the issuance of securities.

5.    Ferrari N.V. ("RACE") is a foreign corporation and was a subsidiary of FCAU and under the control of FCAU until on or about January 3, 2016.  Following the events alleged herein, RACE is a corporation listed on a U.S. Securities Exchange.  RACE was incorporated as a public limited liability company in 2013 under the laws of the Netherlands under the name "New Business Netherlands N.V." for the purposes of effecting the separation of Ferrari S p. A from FCAU.   Following the events alleged herein, the New Business Netherlands N.V. changed its name to Ferrari N.V.

6.    Sergio Marchionne is and at all relevant times was Chairman of the Board, CEO and President as well as Chief Operating Decision Maker ("CODM.") of FCAU's and Ferrari N.V. ("RACE").  All significant and financial Decisions are under the authority of defendant Marchionne who has been and currently is designated as the CODM.  Defendant Marchionne is a controlling person under Section 20 of the Exchange Act (15 U.S.C. § 78t) and a person who aided and abetted the violations of the Exchange Act and regulations issued thereunder alleged in this Complaint.

6. In connection with acts and conduct alleged in this Complaint, Defendants directly and / or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to the mails and interstate telephone and wire communications, to convey information to the public, to convey misleading information and to conceal material information from the public and from investors. At all material times Defendant FCAU authorized and controlled the actions of Defendant RACE in filing registration statements and other documents with the SEC, and taking other actions, as alleged herein. At all material times, Defendant Marchionne, or persons under his supervision and control, filed registration statements and other documents with the SEC, and taking other actions, as alleged herein.

7. Plaintiffs Antonio C. Simonelli, Jacqueline C. Simonelli and Patrick J. Simonelli are individual investors who purchased common stock and / or stock options of FCAU between the dates of January 1, 2015 through January 7, 2016 in reliance on the information published by Defendants and filed with the SEC under the Exchange Act.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

8. On or about July 23, 2015, RACE filed a registration statement (Form F-1) with the SEC for the purposes of registering shares of stock to be issued in connection with transactions to separate RACE from FCAU and establish RACE as a separate company whose shares would be traded on U.S. securities exchanges. This F-1 stated that, as part of the transactions to which the registration statement described, existing shareholders of FCAU would receive one common share of RACE at for every share of FCAU held at the time of the separation of RACE from FCAU. In describing certain transactions pursuant to Netherlands law, referred to as the First and Second Demergers, the Form F-1 stated:

> • Through a Dutch law demerger (*afsplitsing*) (the "First Demerger"), FCA would transfer all of the common shares and special voting shares held by it in us to InterimCo B.V., a newly-formed Dutch private limited liability company (*besloten vennootschap metbeperkte aansprakelijkheid*) ("InterimCo") wholly owned by a Dutch foundation (*stichting*) formed by FCA ("Stichting FCA"), with InterimCo issuing common shares and special voting shares to holders of FCA's common shares and holders of FCA's special voting shares, and common shares to the

3

holders of FCA's mandatory convertible securities. Pursuant to the First Demerger, holders of FCA's common shares and mandatory convertible securities will receive common shares in InterimCo in the same proportion as their holding of common shares in FCA immediately prior to the First Demerger or as determined pursuant to the terms of the mandatory convertible securities and each holder of FCA special voting shares will receive one special voting share in InterimCo for each special voting share of FCA held immediately prior to the First Demerger;

• Pursuant to a second Dutch law demerger (*afsplitsing*) (the "Second Demerger"), InterimCo will transfer all of its common shares and special voting shares in us to a newly-formed Dutch public limited company (naamloze *vennootschap*) ("FE Newco") wholly owned by Stichting FCA with FE Newco issuing common shares to the holders of InterimCo's common shares (including shareholders that have received InterimCo common shares by virtue of their holding FCA mandatory convertible securities). Pursuant to the Second Demerger, holders of InterimCo's common shares will receive common shares in FE Newco in the same proportion as their holding of common shares in InterimCo immediately prior to the Second Demerger, and each holder of InterimCo special voting shares will receive one special voting share in FE Newco for each special voting share in InterimCo held immediately prior to the Second Demerger [.]

* * *

Immediately following the completion of the Second Demerger, all common shares of InterimCo, except the shares held by Stichting FCA, will be cancelled in exchange for distribution of the nominal value of such shares to the shareholders and InterimCo will thereafter be liquidated. We would thereafter be merged (the "Merger") with and into FE Newco. At that time FE Newco would be renamed Ferrari N.V.

9. On or about July 23, 2015, FCAU issued a press release announcing the filing of the Form F-1.

10. On or about August 15, 2015, RACE filed an amended Form F-1 (Form F-1/A) that also stated that existing shareholders of FCAU would receive one common share of RACE at for every share of FCAU held at the time of the separation of RACE from FCAU. In describing certain transactions pursuant to Netherlands law, referred to as the First and Second Demergers, the Form F-1/A stated:

• Through a Dutch law demerger (*afsplitsing*) (the "First Demerger"), FCA would transfer all of the common shares and

4

COMPLAINT

special voting shares held by it in us to InterimCo B.V., a newly-formed Dutch private limited liability company (*besloten vennootschap met beperkte aansprakelijkheid*) ("InterimCo") wholly owned by a Dutch foundation (*stichting*) formed by FCA ("Stichting FCA"), with InterimCo issuing common shares and special voting shares to holders of FCA's common shares and holders of FCA's special voting shares, and common shares to the holders of FCA's mandatory convertible securities. Pursuant to the First Demerger, holders of FCA's common shares and mandatory convertible securities will receive common shares in InterimCo in the same proportion as their holding of common shares in FCA immediately prior to the First Demerger or as determined pursuant to the terms of the mandatory convertible securities and each holder of FCA special voting shares will receive one special voting share in InterimCo for each special voting share of FCA held immediately prior to the First Demerger;

• Pursuant to a second Dutch law demerger (*afsplitsing*) (the "Second Demerger"), InterimCo will transfer all of its common shares and special voting shares in us to a newly-formed Dutch public limited company New Business Netherlands NV (*naamloze vennootschap*) ("FE Newco") wholly owned by Stichting FCA with FE Newco issuing common shares to the holders of InterimCo's common shares (including shareholders that have received InterimCo common shares by virtue of their holding FCA mandatory convertible securities). Pursuant to the Second Demerger, holders of InterimCo's common shares will receive common shares in FE Newco in the same proportion as their holding of common shares in InterimCo immediately prior to the Second Demerger, and each holder of InterimCo special voting shares will receive one special voting share in FE Newco for each special voting share in InterimCo held immediately prior to the Second Demerger[.]

\* \* \*

Immediately following the completion of the Second Demerger, all common shares and special voting shares of InterimCo, except the shares held by Stichting FCA, will be cancelled in exchange for distribution of the nominal value of such shares to the shareholders and InterimCo will thereafter be liquidated. We would thereafter be merged (the "Merger") with and into FE Newco. At that time FE Newco would be renamed Ferrari N.V. Pursuant to the Merger.

11. The reference to FCA in the Form F-1 and Form F-1/A was a reference to FCAU.

12. The Form F-1 and Form F-1/A filed by RACE were available to the public on the EDGAR database maintained by the SEC.  The EDGAR database is available to the public through the internet communications that involve instrumentalities of interstate commerce.

5

COMPLAINT

1    13.    In reliance on the statements contained in the Form F-1 and Form F-1/A,
2 Plaintiffs purchased stock or stock options of FCAU.
3    14.    Plaintiffs are informed and believe, and thereon allege: Defendants, at the time the
4 Form F-1 and Form F-1/A were filed, did not intend to provide existing shareholders of FCAU
5 one common share of RACE at for every share of FCAU held at the time of the separation of
6 RACE from FCAU, intended to issue only one share of RACE or every ten shares of FCAU, and
7 made the statements in the Form F-1 and Form F-1/A to encourage the public to purchase shares
8 of FCAU in anticipation of receiving shares of RACE as represented in the Form F-1 and Form
9 F-1/A knowing that the represented one-for-one distribution would not occur.
10    15.    On or about September 22, 2015, and thereafter RACE filed further amended
11 Forms F-1/A with the SEC.  In connection with the filings on and after September 2015, RACE
12 submitted letters to the SEC that purported to explain the amendments to the Form F-1/A.  These
13 letters were filed with the SEC and available to the public on the EDGAR database.
14    16.    None of the letters submitted by RACE that purported to explain the amendments
15 to the Form F-1/A explained that any amendments changed the representations in the Form F-1
16 or Form F-1/A that represented that existing shareholders of FCAU would receive one common
17 share of RACE at for every share of FCAU held at the time of the separation of RACE from
18 FCAU.   Although the letters submitted by RACE purported to describe the demerger
19 transactions involved and their effect on FCAU shareholders, including the representation that
20 the shares would be distributed to FCAU shareholders "pro-rata," the letters failed to disclose,
21 and concealed, the fact that the new amended Forms F-1/A changed the distribution formula to a
22 new and different formula that that existing shareholders of FCAU would receive one common
23 share of RACE at for every ten (10) shares of FCAU held at the time of the separation of RACE
24 from FCAU.
25    17.    The average investor would not have examined the Forms F-1/A filed with the
26 SEC on or after September 22, 2015 to determine that the distribution formula had changes, for
27 reasons including: (a) the Form F-1/A is over 150 pages long; (b) the Form F-1 and F-1/A filed
28 on July 23 and August 15, 2015 did not contain omissions, blank spaces or other indicia that

COMPLAINT

these sections of the Forms might change, (c) the letters filed with the SEC describing the amendments did not reference this change in formula but instead reasserted that the distribution of RACE shares would be "pro-rata" and (d) neither RACE nor FCAU issues any press release describing the change to the distribution formula or that the distribution formula had changed.

18. The average investor, in the absence of other information prominently presented, would understand the term "pro-rata" in the context used herein to mean a one-for-one distribution.

19. Defendants issued no press release or any other communication to the public stating that there had been any change in how the pro-rata distribution of RACE shares to FCAU shareholders would be determined from the representations and descriptions made in the Form F-1 filed on July 23, 2015 until on or about January 3, 2016.

20. On or about January 3, 2016, the separation of RACE from FCAU was completed. On or about that same time, FCAU shareholders, including Plaintiffs, received or became entitled to receive shares of RACE pursuant to the separation transactions alleged in this Complaint.

21. In connection with the foregoing separation transaction, FCAU shareholders, including Plaintiffs, received one share of RACE for every ten (10) shares of FCAU shares held by FCAU shareholders, including Plaintiffs.

22. On or about January 3, 2016, FCAU announced that FCAU shareholders would be entitled to receive one share of RACE for every ten (10) shares of FCAU.

23. Immediately following January 3, 2016, the price of shares of FCAU declined. Because of this decline, plaintiffs suffered loss of the value of their holdings in FCAU.

24. By reason of the representations and concealments alleged herein, Plaintiffs have been damaged, have paid excessive prices for shares or options for shares of FCAU and have lost profits they reasonably anticipated receiving from the issuance of RACE shares. The value of the shares of FCAU stock or stock options they purchased was and had been inflated because of the expectation of receiving one share of RACE for every share of FCAU, the value of their holdings in FCAU declined after the January 3, 2016, announcement that FCAU shareholders

1 would only receive one share of RACE for every ten (10) shares of FCAU and the value of
2 RACE shares was less than Plaintiffs or other reasonable investors would have received under
3 the representations by Defendants as to the distribution of RACE shares.

4     25.     In light of the representations made in the Form F-1 the representation that
5 holders of FCAU shares would receive shares in RACE on a one-for-one basis, the expected and
6 anticipated value of common shares of RACE was $6.75 per share and FCAU had an expected or
7 anticipated value of $17.25 per share.  Prior to the disclosure of the actual distribution at a one
8 to ten (10) ratio on January 3, 2016, the 60-day mean price of FCAU shares was about $14.60
9 per share.  The 60-day mean price of FCAU and RACE shares combined after January 3, 2016
10 was about $12.19 per share.  The high price of FCAU shares in the period from July 23, 2015 to
11 January 3, 2016 was $16.22 per share.  The low price of FCAU and RACE shares combined after
12 January 3, 2016, was about $10 per share.  Plaintiffs are informed and believe, and thereon
13 allege, that the announcement of the 1:10 distribution ratio caused the foregoing drops in price
14 and value of FCAU and RACE shares.

**FIRST CLAIM FOR RELIEF**

(Violation of Exchange Act)

18     26.     Plaintiffs incorporate the allegations in paragraphs 1 through 25 hereof as part of
19 this Claim for Relief.

20     27.     Rule 10-b5 of the SEC's Rules (17 CFR § 240.10b-5) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> **(a)** To employ any device, scheme, or artifice to defraud,
>
> **(b)** To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> **(c)** To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

28. Section 18(a) of the Exchange Act (15 U.S.C. § 78r(a)) provides, in material part:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder, or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

29. Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 21(d), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

30. By the acts and omissions alleged herein, Defendants violated the Exchange Act and the rules thereunder by:

   a. Employing a device, scheme, or artifice to defraud, omitting to state material facts necessary in order to make the statements in the Form F-1 and Form F-1/A not misleading and engaging in acts, practices, or a course of business which operated or would operate as a fraud or deceit upon any person, in particular by representing that shares of RACE would be distributed to shareholders of FCAU on a basis of one share of RACE for one share of FCAU and then concealing the intended plan to distribute one share of RACE for ten (10) shares of FCAU by filing misleading letters that omitted disclosing the change in distribution formula and failing to issue any public statement disclosing the change in formula prior to the effectuation of the separation transactions, thereby inducing investors to

1 believe that the formula had not changed from the formula as initially stated in Form F-1.

    b.    Making statements that were at the time, and in the light of the circumstances under which they were made, false or misleading with respect to the distribution of RACE shares to FCAU shareholders.

    c.    Aiding and abetting the actions of fraud, deceit, misstatements, omissions, concealments and failures to disclose and the violations of the Exchange Act alleged herein.

31.    Plaintiffs relied on the statements, representations and omissions by Defendants in purchasing and holding shares or options for shares of FCAU in anticipation of the distribution of RACE shares to FCAU shareholders and the increased value of FCAU shares such distribution would create.

32.    Because of the violations of the Exchange Act and rules alleged herein, Plaintiffs have suffered damages and economic loss.

33.    Defendants have acted with fraud and the intent to deceive, and Plaintiffs are entitled to punitive damages against them.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below in the Prayer.

**SECOND CLAIM FOR RELIEF**

(Violation of California Corporations Code §§ 25400, et seq.)

34.    Plaintiffs incorporate the allegations in paragraphs 1 through 25 hereof as part of this Claim for Relief

35.    California Corporations Code Section 25400 provides, in material part:

It is unlawful for any person, directly or indirectly, in this state:

\* \* \*

(b)  To effect, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

1    (c)  If such person is a broker–dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to induce the purchase or sale of any security by the circulation or dissemination of information to the effect that the price of any such security will or is likely to rise or fall because of market operations of any one or more persons conducted for the purpose of raising or depressing the price of such security.

    (d)  If such person is a broker–dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

36. California Corporations Code Section 25401 provides:

    It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

37. At all material times in connection with the transactions alleged herein, defendants were persons selling or offering to sell securities in the State of California, and in particular securities of FCAU and securities of RACE that would be issued to owners of FCAU securities.

38. In the various written filings and letters alleged herein, Defendants made false, misleading or untrue statements of material fact, or omitted to state material facts that would have made the statements they made not misleading.  Such statements or omissions were made in connection with the offer or sale of securities of FCAU and RACE and for the purpose of

inducing the purchase of shares of FCAU at higher prices in anticipation of the issuance of RACE shares to holders of FCAU stock.

39. By the acts and omissions alleged herein, Defendants violated California Code Sections 25400 and 25401.

40. Plaintiffs relied on the statements, representations and omissions by Defendants in purchasing and holding shares or options for shares of FCAU in anticipation of the distribution of RACE shares to FCAU shareholders and the increased value of FCAU shares such distribution would create.

41. Plaintiffs have suffered damages in purchasing shares or options for shares of FCAU at prices that were inflated because of the statements or omissions of Defendants alleged herein and have lost the benefits they reasonably anticipated receiving based on the statements Defendants made and the omission of Defendants to state facts that would have made the statements they made not misleading.

42. Defendants have acted with fraud and the intent to deceive, and Plaintiffs are entitled to punitive damages against them.

## THIRD CLAIM FOR RELIEF

(Fraud and Deceit)

43. Plaintiffs incorporate the allegations in paragraphs 1 through 25 hereof as part of this Claim for Relief.

44. At all times from July 23, 2105 through January 3, 2016, Defendants knew and anticipated that investors, including investors like Plaintiffs, (a) would purchase shares of FCAU in reliance on the representations contained in the Form F-1 and Form F-1/A filed on July 23 and August 15, 2015, (b) would anticipate that any change to the distribution formula for shares of RACE to FCAU shareholders would be disclosed prominently and directly in filings with the SEC or in other public announcements, (c) would anticipate that the Form F-1 filed with the SEC would not be materially changed as to those matters where there were no omissions or blank spaces in the text where statements or representations were made and (d) would not review or re-

1  examine amended Forms unless there was an affirmative indication that a material change had
2  been made.
3      45.    From July 23, 2105 through January 3, 2016, Defendants knew that the
4  representation that shares of RACE would be distributed on the basis of one share of RACE for
5  every share of FCAU was false and/or that corrective information had not been made readily
6  available to potential investors in FCAU.  Defendants intended to cause Plaintiffs and other
7  investors to purchase shares or options for shares in FCAU in reliance on the representations as
8  to the distribution of RACE shares to FCAU shareholders in the Form F-1 and Form F-1/A filed
9  on July 23 and August 15, 2015 and on the failure to disclose prominently or affirmatively that
10  the distribution formula had changed.
11      46.    Defendants intended to, and did, mislead Plaintiffs by (a) representing that
12  shareholders of FCAU would receive one share of RACE for each share of FCAU, (b) failing to
13  take action to disclose that the distribution formula had changes, and (c) filing letters and
14  documents with the SEC that concealed the change in the distribution formula and asserted that
15  the distribution would be pro-rata.
16      47.    Plaintiffs relied on the statements, representations and omissions by Defendants in
17  purchasing and holding shares of FCAU in anticipation of the distribution of RACE shares to
18  FCAU shareholders and the increased value of FCAU shares such distribution would create.
19      48.    Because of the misrepresentations and concealments alleged herein, Plaintiffs
20  have suffered damages and economic loss.
21      49.    Defendants have acted with fraud and the intent to deceive, and Plaintiffs are
22  entitled to punitive damages against them.
23      WHEREFORE, Plaintiffs pray for relief as more fully set forth below in the Prayer.

**PRAYER**

25  Plaintiffs pray for relief as follows.
26  1.    For actual, general and compensatory damages against defendants, for lost profits,
27      and for exemplary and punitive damages against defendants, according to proof.
28  2.    For interest.

3. For costs of suit, costs of necessary advisors and attorney fees.

4. For such other and further relief as is appropriate on the evidence presented.

Dated: December 29, 2017.

                KATZENBACH LAW OFFICES

                By  /s/ Christopher W. Katzenbach
                    Christopher W. Katzenbach
                Attorneys for Plaintiffs ANTONIO C. SIMONELLI, JACQUELINE C. SIMONELLI and PATRICK SIMONELLI

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and Claims for Relief alleged herein.

Dated: December 29, 2017.

                KATZENBACH LAW OFFICES

                By  /s/ Christopher W. Katzenbach
                    Christopher W. Katzenbach
                Attorneys for Plaintiff ANTONIO C. SIMONELLI, JACQUELINE C. SIMONELLI, and PATRICK SIMONELLI